**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Case No. 11 C 2487 |
| | ) |
| v. | ) Judge Bucklo |
| | ) |
| AMBERVINE MARKETING LLC, | ) Magistrate Judge Schenkier |
| a Minnesota limited liability company, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**FTC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A TEMPORARY**
**RESTRAINING ORDER WITH OTHER EQUITABLE RELIEF AND ORDER TO**
**SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

## I.  INTRODUCTION

The Federal Trade Commission asks that the Court take immediate action to stop an online marketing scheme that uses fake news websites and false weight loss claims to deceive consumers into purchasing products.  For at least the past two years, Defendant Zachary Graham, and his companies Ambervine Marketing LLC and Encastle Inc., have operated numerous websites featuring phony news reports about acai berry weight loss supplements and other dubious products.  Defendants craft the sites to look like legitimate news sites by using names such as "USAHealthNewsToday.org," and by utilizing mastheads like "USA Health News."  The sites prominently claim that the reports have been "seen on" several major news outlets, including CNN and Fox News, and include a "comments" section with what appears to be glowing consumer testimonials.  Defendants' sites typically feature a purported news reporter's account of study results showing dramatic weight loss – over 30 pounds in one month – through use of acai berry supplements.

Nearly everything about these "news" sites is fake. The websites are not maintained by news organizations. The reporter, study results, and comments from satisfied consumers all are fabricated. The claims about weight loss from acai berries are false: no evidence establishes that acai berries cause weight loss, and the dramatic weight loss Defendants describe is unachievable. Indeed, just last year, a court in this district issued a TRO and preliminary injunction enjoining false claims that acai berries cause weight loss.[1] The truth is Defendants' websites are simply advertisements aimed at deceptively enticing consumers to purchase the featured products from third party websites recommended by Defendant. The FTC has received numerous complaints from consumers who, having been deceived by fake news sites like Defendants', were charged $60 to $100 per month for the products. Defendants' practices likely have affected thousands of consumers, and the conduct is ongoing.

The FTC respectfully asks this Court to bring Defendants' harmful practices to a swift end by entering the FTC's proposed TRO. The FTC's proposed TRO is narrowly tailored to enjoin Defendants' illegal practices and preserve the Court's ability to provide effective final relief.[2]

## II.    DEFENDANTS' ILLEGAL BUSINESS PRACTICES

Since at least 2009, Defendants have marketed acai berry weight loss supplements and other products through websites that are designed to look like the sites of objective news

---

[1]  *See FTC v. Central Coast Nutraceuticals, Inc.*, No. 10 C 4931 (N.D. Ill.) (Norgle, J.) (*ex parte* TRO entered Aug. 6, 2010; stipulated preliminary injunction entered Sept. 17, 2010).

[2]  This matter is one of ten cases filed by the FTC – including five in this district – against entities marketing acai berry dietary supplements and other products through deceptively formatted fake news sites.

organizations that have conducted independent evaluations of the products.[3]  Printouts of examples of Defendants' sites – which include "USAHealthNewsToday.org" and "USAHealthReportsToday.org" – have been submitted to the Court.[4]  Defendants take steps to hide their connection to the websites, and frequently move their fake news reports from one site to another.  Records subpoenaed from third parties, however, show that Defendants registered and paid for websites where the fake news reports appeared, and placed numerous online ads to attract consumers to their websites.[5]

Defendants are engaged in "affiliate marketing," a form of Internet marketing in which "affiliates" are paid to entice consumers to visit websites where "merchants" offer products for

---

[3]  The Court has personal jurisdiction over Defendants under the FTC Act's nationwide service of process provision, 15 U.S.C. § 53(b), because Defendants have minimum contacts with the United States.  *See FTC v. Cleverlink Trading Ltd.*, No. 05 C 2889, 2006 WL 1735276, at *4 (N.D. Ill. June 19, 2006) (Kendall, J.); *FTC v. Bay Area Bus. Council, Inc.*, No. 02 C 5762, 2003 WL 21003711, at *2 (N.D. Ill. May 1, 2003) (Darrah, J.).  Moreover, under the venue provision contained in the FTC Act, an action may be brought wherever a person "resides or transacts business."  15 U.S.C. § 53(b).  Here, Defendants have transacted business in this district.  *See* PX 1, McKenney (FTC Investigator) Dec., ¶¶ 8-14 (describing Defendants' ads and websites viewed in district, including ad on ChicagoTribune.com).  In addition, venue is proper over a corporation where it is subject to personal jurisdiction.  *See Bay Area*, 2003 WL 21003711, at *2.

[4]  The website USAHealthNewsToday.org was registered by Ambervine Marketing LLC.  *See* PX 1, McKenney Dec. ¶¶ 8, 15(a), 16 & Att. B, pp. 4-7 (copy of website) & Att. I, p. 2 (domain registration records); PX 4, Hernandez (NameCheap, Inc.) Dec., Att. A, pp. NC00041-NC00042 (domain registration records).  The website USAHealthReportsToday.org was registered by Encastle Inc.  *See* PX 1, McKenney Dec. ¶¶ 9, 15(b) & Att. C, pp. 3-6 (copy of website) & Att. I, p. 3 (domain registration records).

[5]  Defendants' "USA Health News" report has appeared at various sites, including USAHealthNewsToday.org and USAHealthReportsToday.org in September 2010, and ConsumerOnlineReports.org in March and April 2011.  *See* PX 1, McKenney Dec. ¶¶ 8-13, Att. B, pp. 4-7, Att. C, pp. 3-6, Att. D, pp. 3-8, Att. E, pp. 3-8, Att. F, pp. 3-8, Att. G, pp. 3-8 (copies of websites).  Defendants have purchased voluminous online ads linking to fake news sites touting acai berry products and skin treatment products.  *See id.*, ¶¶ 14 & Att. H (copy of "KYNR News 9" website discussing skin treatments); *id.*, ¶¶ 17-23 (summary of Microsoft and Google billing and advertising records) & Att. J (Google billing and advertising records); PX 3, Miller (Microsoft Corporation) Dec., Atts. A-D (Microsoft billing and advertising records).

sale. Defendants' fake news sites are aimed at getting consumers to click on a link, visit a merchant's website, and purchase products – resulting in Defendants earning commissions.[6] To do this, Defendants must first attract consumers to their fake news sites, which Defendants accomplish by placing banner ads (often called "sponsored links") throughout the Internet. During roughly the past two years, Defendants spent over $170,000 to disseminate 3.7 million ads to consumers through high-volume websites such as Google.com, Bing.com, and Chicagotribune.com; and consumers clicked on those ads over 240,000 times.[7]

To increase the odds that consumers will click on their ads, Defendants often include bogus "display URLs" suggesting that clicking on the ads will take consumers to legitimate websites such as cnn.com, gnc.com, or buy.com. For example, one of Defendants' ads recently appearing on the Chicago Tribune's website states:

> URGENT Acai Berry Warning
> SHOCKING New Acai Berry Warning! READ This Before You Try Acai Berry
> www.cnn.com/Acai-Berry-Warning[8]

Consumers who click on Defendants' ads are not taken to cnn.com or any other legitimate site. Instead, the consumers are taken to fake news sites touting acai berry supplements or skin treatments.[9]

---

[6] *See* PX 1, McKenney Dec. ¶¶ 3-5 & Att. A (background on affiliate marketing); *see also 1-800 Contacts, Inc. v. Lens.com, Inc.*, __ F. Supp. 2d ___, No. 07-CV-591, 2010 WL 5150800, at *4 (D. Utah Dec. 14, 2010) (discussing affiliate marketing); *see also Amazon.com LLC v. N.Y. State Dep't of Taxation & Fin.*, 913 N.Y.S.2d 129, 134 (N.Y. App. Div. 2010) (same).

[7] *See* PX 1, McKenney Dec., ¶¶ 17-23 (summarizing Microsoft and Google data).

[8] *Id.*, ¶ 12 & Att. F, pp. 1-2 .

[9] *Id.*, ¶¶ 10-13 (describing process) & Atts. D, pp. 1-8, Att. E, pp. 1-8, Att. F, pp. 1-8, Att. G, pp. 1-8 (copies of ads and corresponding websites); *see also id.*, ¶¶ 19(c), 22(c) (disconnect between display URLs and destination URLs shown in Microsoft and Google advertising data). In June 2010, Google warned Defendants against using fake display URLs in their ads. *Id.*, ¶ 20 & Att. J, pp. 14-17 (email

Defendants further their illegal business in two key ways: (1) by utilizing the deceptive fake news format; and (2) by misrepresenting the weight loss effects of the acai berry products they promote.

## A. Deceptive Fake News Format

Defendants' websites are deceptively designed to give consumers the net impression that the sites contain objective news reports evaluating the featured products. Specifically, the sites:

- contain mastheads such as "USA Health News" and "KYNR News 9," suggesting that the sites are affiliated with objective news organizations;[10]

- contain subject tabs frequently used on news websites such as "World," "Politics," Health" and "Sports;"[11]

- employ logos of real news outlets including ABC, Fox News, CBS, CNN, USA Today and MSNBC;[12]

- include a news story supposedly written by a reporter who decided to investigate acai berry weight loss products, and who presents detailed study results about the featured products;[13] and

- include a "comments" section containing what appear to be consumer testimonials depicting positive experiences with the products.[14]

---

dated June 22, 2010).

[10] *See id* , ¶¶ 9, 14 & Att. B, p. 4 ("USA Health News") & Att. H, p. 1 ("KYNR News 9").

[11] In fact, it appears Defendants cut and pasted the subject tabs for "USA Health News" directly from CNN's website. *Compare* PX 1, McKenney Dec., Att. B, p. 4 ("USA Health News") *with* CNN's website at www.cnn.com.

[12] PX 1, McKenney Dec., ¶¶ 8-13 & Att. B, pp. 4-7, Att. C, pp. 3-6, Att. D, pp. 3-7, Att. E, pp. 3-7, Att. F, pp. 3-7, Att. G, pp. 3-7.

[13] *Id.*

[14] *Id.,* ¶¶ 10-14 & Att. D, pp. 5-6, Att. E, pp. 5-6, Att. F, pp. 5-6, Att. G, pp. 5-6 , Att. H, pp. 3-5.

Defendants' news reports are fake.  The "reporters" are simply stock photographs or images pirated from news networks.  The study results, including dramatic weight loss and reduced cholesterol levels, are fabricated.[15]  The consumer testimonials are equally phony.[16] The sites are simply advertisements published by Defendants in an effort to attract consumers to websites of third party merchants selling the featured products.[17]  Defendants fail to clearly disclose their connection to these merchants.[18]

### B.    False Claims About Acai Berries

Defendants' websites also make false and unsupportable weight loss claims about the acai berry products the sites "investigate."[19]  Specifically, Defendants claim to have conducted a

---

[15]  The news commentator pictured on "USA Health Reports" appears to be a prominent French news anchor.  *Compare id.*, Att. B, p. 4 (USAHealthNewsToday.org website) *with id. ¶* 28 & Att. M (article discussing use of French news anchor on fake news sites).  The reporter "James Field" pictured on "KYNR News 9" is a stock photograph.  *Compare id.*, Att. H, p. 1 (KYNR9.com website) *with id.*, ¶ 30 & Att. P (stock photo).

[16]  The same consumer comments appear repeatedly on "USA Health Reports" but the dates are changed to make the comments look current every time a consumer visits the website.  *Compare id.* ¶ 10, Att. D, pp. 5-6 (ConsumerOnlineReports.org website as it appeared on March 10, 2011) *with id.* ¶ 13, Att. G, pp. 5-6 (same website on April 1, 2011).

[17]  *See* PX 1, McKenney (FTC Investigator) ¶¶ 3-5 & Att. A (discussion of affiliate marketing). Defendants' fake news sites have touted a variety of acai berry products, including "LeanSpa Acai," "Acai Weight Loss," "Acai Maximum," "Acai Lipo," "Acai Slim," and "Acai Thermo."  *See id.*, Att. B, pp. 5-6, Att. C, pp. 4-5, Att. D, pp. 4-5, Att. E, pp. 4-5, Att. F, pp. 4-5, Att. G, pp. 4-5.

[18]  Defendants have inserted a statement in extremely small type at the bottom of some, but not all, of their websites stating, in part: "[t]his website, and any page on the website, is based loosely off a true story, but has been modified in multiple ways including, but not limited to: the story, the photos, and the comments.  Thus, this page, and any page on this website, are not to be taken literally or as a non-fiction story. . . .  This page receives compensation for clicks on or purchase of products featured on this site."  *E.g., id.*, Att. E, p. 7.  As explained *infra* at p. 11, n. 28, this statement, which appears well below where the consumer would form his or her purchasing decision, is not conspicuous and cannot undo the express representations made by Defendants in the body of their websites.

[19]  Acai is a small dark purple fleshy berry-like fruit of a tall slender palm tree (Euterpe oleracea), which is native to Central and South America.  *See* Merriam Webster Dictionary, available at http://www.merriam-webster.com/dictionary/acai.

6

"study" in which "40 people of different body types tested the product" and the "average person" lost over 30 pounds in one month. Defendants claim further that combining the acai berry product with a colon cleanse product caused study participants to achieve even more dramatic weight loss. Defendants bolster these claims with sham consumer comments raving about the products.[20]

Defendants' weight loss claims are utterly false, and would constitute deceptive practices and false advertising even if Defendants eschewed their fake news format. There is no medical evidence whatsoever that acai berries alone, or in combination with a companion product, can produce the type of weight loss that Defendants claim. The FTC has submitted testimony from a nutrition expert from Northwestern University establishing that: (1) there are no scientific studies establishing that acai berries are effective in causing weight loss; (2) any weight loss caused by companion products like colon cleanse products would be marginal, and would pale in comparison to Defendants' claims; and (3) weight loss of twenty-five pounds or more in four weeks, which Defendants claim can be achieved without exercise or dietary changes, simply is not possible from ingestion of any product.[21]

## C.     Harm to Consumers

Defendants' websites offer consumers an opportunity to obtain the featured acai berry products by clicking on links in Defendants' fake news websites and visiting the websites of

---

[20]   *See* PX 1, McKenney Dec. ¶¶ 8-13, Att. B, pp. 4-7, Att. C, pp. 3-6, Att. D, pp. 3-8, Att. E, pp. 3-8, Att. F, pp. 3-8, Att. G, pp. 3-8 (copies of websites).

[21]   *See* PX 2, Kushner Dec. ¶¶ 7-11. Products with laxative effects, such as colon cleansers, have, at best, marginal and temporary weight loss effect due to the loss of waste or water weight. *See id.*, ¶ 10. The FTC's expert, Dr. Robert F. Kushner, is a Professor of Medicine at Northwestern University Feinberg School of Medicine, Clinical Director of the Northwestern Comprehensive Center on Obesity in Chicago, and Medical Director of the Center for Lifestyle Medicine in Chicago. *Id.*, ¶ 1.

third-party merchants.[22]  The FTC has been flooded with complaints from consumers tricked into

purchasing acai berry products touted in fake news reports like those posted by Defendants.[23]

Many consumers were charged $60 to $100 per month for the products.[24]  Due to the high level

of consumer confusion, many legitimate news agencies – including Consumer Reports – have

issued warnings about fake news sites like Defendants'.[25]  In light of the fact that Defendants

have spent over $170,000 for ads to attract consumers to their sites, Defendants almost certainly

have received multiple times that amount in ill-gotten commissions from this scheme.

## III.    ARGUMENT

Defendants' practices are clear violations of the FTC Act.  To prevent further consumer

injury and to preserve Defendants' assets for restitution to victims, the FTC asks that this Court

issue the proposed temporary restraining order.  The order would prohibit Defendants' ongoing

illegal practices, protect assets, and require an accounting of ill-gotten gains.  Courts in this

district have granted TROs with comparable relief in similar FTC actions.[26]

---

[22] *See, e.g.*, PX 1, McKenney Dec. ¶¶ 8-13, Att. B, pp. 4-7, Att. C, pp. 3-6, Att. D, pp. 3-8, Att. E, pp. 3-8, Att. F, pp. 3-8, Att. G, pp. 3-8 (offering "free trials" of products).

[23] *See id.*, ¶¶ 24-26 & Att. K (representative consumer complaints).  Consumer complaints often fail to identify the specific fake news sites visited by the consumer, but see *id.*, Att. K, p. 1 (consumer complaint referencing Defendants' "USA Health News" site).

[24] *Id.*, ¶ 25 & Att. K, pp. 3, 5, 9, 11, 13, 15, 21, 23, 27, 29.  The complaints show that many consumers believed that they were receiving a "free trial" of the product and were unwittingly signed up for a recurring membership program resulting in monthly charges for the products.  *See id.*

[25] *See id.*, ¶ 27 & Att. L (attaching various articles warning of fake news sites).

[26] *See, e.g., FTC v. Central Coast Nutraceuticals, Inc.,* 10 C 4931 (N.D. Ill. Aug. 5, 2010) (Norgle, J.) (entering *ex parte* TRO for false claims regarding acai berry supplements); *FTC v. Atkinson*, 08 C 5666 (N.D. Ill. Oct. 6, 2008) (Kendall, J.) (*ex parte* TRO and asset freeze for violations of FTC Act involving deceptive sale of pharmaceuticals and dietary supplements); *FTC v. Spear Systems, Inc.*, 07 C 5597 (N.D. Ill. Oct. 5, 2007) (Andersen, J.) (*ex parte* TRO and asset freeze for violations of FTC Act involving sale of dietary supplement); *FTC v. Sili Neutraceuticals, LLC*, 07 C 4541 (N.D. Ill. Aug. 13, 2007) (Kennelly, J.) (same); *FTC v. Harry,* 04 C 4790 (N.D. Ill. July 27, 2004) (Manning, J.) (same);

### A.      A Temporary Restraining Order Is Appropriate and Necessary Here.

A district court may issue injunctions to enjoin violations of the FTC Act. *See* 15 U.S.C.

§ 53(b); *FTC v. Febre*, 128 F.3d 530, 534 (7th Cir. 1997); *FTC v. World Travel Vacation*

*Brokers*, Inc., 861 F.2d 1020, 1028 (7th Cir. 1988).  To obtain a temporary restraining order, the

FTC must merely demonstrate: (1) a likelihood of success on the merits, and that (2) the balance

of the equities tips in its favor.  *World Travel*, 861 F.2d at 1029.  "[T]he FTC need not prove

irreparable injury to obtain a preliminary injunction."  *Kinney v. Int'l Union of Operating*

*Eng'rs*, 994 F.2d 1271, 1277 (7th Cir. 1993).  The FTC easily satisfies these elements here.

### 1.      There is a Strong Likelihood Defendants Have Violated the FTC Act

Defendants have engaged in multiple FTC Act violations.  The FTC Act prohibits

"deceptive acts or practices" and "the dissemination of any false advertisement in order to

induce the purchase of food, drugs, devices or cosmetics."  15 U.S.C. §§ 45(a), 52.[27]  A material

representation or omission that "likely would mislead" consumers acting reasonably under the

circumstances is "deceptive" and violates the FTC Act.  *See World Travel*, 861 F.2d at 1029;

*see Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir.1992).  *See also FTC v. Bay Area Bus.*

*Council*, 423 F.3d 627, 635 (7th Cir. 2005) (corporate liability established under FTC Act by

demonstrating defendant made "material representations likely to mislead a reasonable

consumer").  Express claims are presumed to be material.  *See Kraft, Inc.*, 970 F.2d at 322; *FTC*

*v. Febre*, 1996 WL 396117, at *2 (N.D. Ill. July 3, 1996).  The FTC may demonstrate the

deceptive nature of advertising claims by either: (1) demonstrating the falsity of the claims; or

*FTC v. AVS Marketing, Inc.*, 04 C 6915 (N.D. Ill. Oct. 27, 2004) (Moran, J.) (*ex parte* TRO and asset freeze for deceptive marketing of "Himalayan Diet" supplements).

[27]  Dietary supplements such as weight loss pills are a "food" and/or "drugs" for purposes of the statute.  *See FTC v. SlimAmerica, Inc.*, 77 F.Supp.2d 1263, 1272 (S.D. Fla. 1999).

(2) showing that the defendant lacked a reasonable basis for making the claims, *i.e.*, "substantiation." *See, e.g., FTC v. QT*, 448 F. Supp. 2d 908, 957-59 (N.D. Ill. 2006); *FTC v. Sabal*, 32 F. Supp. 2d 1004, 1007 (N.D. Ill. 1998). The FTC is not required to prove intent to deceive. *See Bay Area*, 423 F.3d at 635.

Under the Seventh Circuit's test for injunctive relief, the threshold showing of likelihood of success is a "better than negligible" chance. *See Cooper v. Salazaar*, 196 F.3d 809, 813 ( 7th Cir. 1999). Here, Defendants have violated the FTC Act by: (1) making false claims about the acai berry products, and lacking a reasonable basis for the claims; and (2) misrepresenting that their websites provided independent reviews of the products, and failing to adequately disclose that the websites were advertisements.

### a. Defendants' False Product Claims

As described in § II.B above, Defendants' websites promoting the acai berry products expressly misrepresent that the products will result in rapid and substantial weight loss, including as much as thirty pounds in four weeks. The FTC's expert testimony establishes that: (1) there is no medical evidence whatsoever that acai berries alone, or in combination with a companion product, can produce the type of weight loss that Defendants claim, and (2) weight loss of thirty pounds in four weeks, which Defendants claim can be achieved without exercise or dietary changes, simply is not possible from ingestion of any product. Courts in this district have repeatedly granted TROs under similar circumstances (*see supra*, p. 8, n. 26), including an *ex parte* TRO entered last year prohibiting essentially identical false claims about acai berries as are involved here, *see FTC v. Central Coast Nutraceuticals, Inc.,* 10 C 4931 (N.D. Ill. Aug. 6, 2010) (Norgle, J.).

10

**b.** **Defendants' Deceptive Website Format**

As described in § II.A above, Defendants' websites also are deceptively designed to give consumers the impression that the sites are objective news reports when, in fact, the websites are advertisements. Courts look to the "overall, net impression" of consumers when deciding whether particular statements or omissions are deceptive. *QT*, 448 F. Supp. 2d at 958. *See also FTC v. Nat'l Bakers Servs., Inc.*, 329 F.2d 365, 367 (7th Cir. 1964) ("The important criterion in determining the meaning of an advertisement is the net impression that it is likely to make on the general populace.").

Here, Defendants' websites convey the net impression that objective news reporters have performed independent tests demonstrating the effectiveness of the featured products. This impression is bolstered by what appear to be testimonials from satisfied consumers and statements that the reports have been "seen on" major reputable news outlets such as ABC, Fox News, CBS, CNN, and USA Today. In fact, Defendants have not performed independent tests on the products, and the reporter, the news organization, and the comments all are completely fictional. As explained above, at § II.C, consumers not only are *likely* to be deceived by fake news sites such as Defendants', they *have been* deceived.[28]

---

[28] The fact that Defendants have buried disclaimers in some of their fake news sites is of no moment. "Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *FTC v. US Sales Corp.*, 785 F. Supp. 737, 751 (N.D. Ill. 1992); *see also FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 12 (1st Cir. 2010). Here, Defendant's disclaimers are in small type hidden at the bottom of the websites, well below the false claims made by Defendants. Defendants often leave a large blank space above the disclaimers, and bury them in voluminous text, further reducing the chance that consumers will see, read or understand them. *See, e.g.,* PX 1, McKenney Dec., Att. E, p. 7.

11

### 2. Zachary Graham Is Individually Liable.

Defendant Graham is the perpetrator of this illicit scheme and is individually liable for the violations of the FTC Act and TSR described above. An individual may be held liable for corporate practices where he or she (1) participated directly in or had authority to control the acts or practices; and (2) knew or should have known about those practices. *FTC v. World Media Brokers,* 415 F.3d 758, 764 (7th Cir. 2005); *see also Bay Area,* 423 F.3d at 636; *FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564, 573-74 (7th Cir. 1989). Authority to control can be evidenced by "active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Amy Travel*, 875 F.2d at 573. The Commission need not show intent to defraud. *Id*. at 573-74. Instead, the knowledge requirement may be satisfied by a showing that the individual (1) had actual knowledge of the deceptive acts or practices, (2) was recklessly indifferent to the truth or falsity of the representations, or (3) had an awareness of a high probability of fraud coupled with an intentional avoidance of the truth. *Bay Area,* 423 F.3d at 636; *World Media Brokers,* 415 F.3d at 764. The "degree of participation in business affairs is probative of knowledge." *Amy Travel*, 875 F.2d at 574.

Graham runs both Ambervine and EnCastle from his residence. Corporate records for Encastle identify him as its sole Director. He has repeatedly used a credit card in his own name to pay for domain names and online ads used in the scheme. He communicates directly with the companies placing his ads.[29] Given these facts, Graham clearly meets the standard for individual liability.

---

[29] *See* PX 1, McKenney Dec. ¶¶ 16, 18, 21, 31-32 & Att. J, pp. 1-3, 18-19 (Google billing records and email correspondence) & Atts. Q-S (corporate and property records); PX 3, Miller Dec., Atts. A, E (Microsoft billing records and email correspondence); PX 4, Hernandez Dec., Att. A, pp. NC00052-NC00067 (NameCheap billing records).

### 3. The Equities Tip Decidedly in the FTC's Favor

Once the Commission has shown a likelihood of success on the merits, the Court must balance the equities, assigning "far greater weight" to the public interest than to any of Defendants' private concerns. *World Travel*, 861 F.2d at 1029. The public equities in this case are compelling, as the public has a strong interest in halting Defendants' deceptive conduct and preserving assets necessary to provide effective final relief to victims. Defendants, by contrast, have no legitimate interest in engaging in illegal conduct. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) (upholding finding of "no oppressive hardship to defendants in requiring them to comply with the FTC Act, refrain from fraudulent representation or preserve their assets from dissipation or concealment"); *Sabal*, 32 F. Supp. 2d at 1009.

### B. This Court Should Enter the FTC's Narrowly Tailored Proposed TRO

The FTC requests that the Court issue the attached proposed TRO. In fashioning appropriate injunctive relief, this Court has authority "to grant any ancillary relief necessary to accomplish complete justice[.]" *World Travel*, 861 F.2d at 1026; *see also Febre*, 128 F.3d at 534 (district court has authority in FTC action to "order any ancillary equitable relief necessary to effectuate the exercise of the granted powers"). The FTC's proposed order would maintain the *status quo* by prohibiting future law violations and preserving assets and documents to ensure that the Court can grant effective final relief in this matter.

### 1. Prohibited Business Activities

The FTC's proposed TRO contains provisions necessary to stop Defendants' illegal conduct. Particularly, Sections I and II prohibit Defendants from further violating the FTC Act by making false weight loss claims about acai berry products, by misrepresenting that their sites

13

are objective news reports, and by failing to clearly and conspicuously disclose that their websites are advertisements.

### 2. Asset Preservation, Financial Statements, and Accounting

Part of the relief sought by the FTC in this case is restitution for the victims of Defendants' fraud. When a district court determines that it is "probable that the FTC [will] prevail in a final determination of the merits," it has "a duty" to ensure that defendants' assets are "available to make restitution to the injured consumers." *World Travel*, 861 F.2d at 1031. The order in this case should extend to individual assets as well as corporate assets because the Commission is likely to succeed in showing that all of the Defendants are liable for restitution. *See id.* (affirming freeze on individual assets); *see also FTC v. Datacom Mktg. Inc.,* No. 06 C 2574, 2006 U.S. Dist. LEXIS 33029, at *16-17 (N.D. Ill. May 24, 2006) (freezing assets of individual and corporate defendants).

Defendants have lured over 240,000 consumers to their deceptive websites; and numerous consumers likely have been tricked into purchasing products due to Defendants' misrepresentations and false claims. In order to preserve the possibility of restitution for these victims, the FTC seeks the preservation of Defendants' assets. Particularly, Section III of the proposed TRO would prohibit Defendants from utilizing assets except for reasonable, usual and ordinary business expenses. Additionally, Section IV would require Defendants to provide the FTC with a completed financial statement and an accounting. These sections are necessary and appropriate to determine the amount of money lost by consumers, the amount of Defendants' ill-gotten gains, and to prevent the concealment or dissipation of assets pending a final resolution of this litigation.

### 3. Additional Necessary Relief

The FTC's proposed TRO also contains provisions necessary for halting Defendants' illegal conduct and maintaining the *status quo*. Section V requires Defendants to post notice of the lawsuit on their websites. Section VI requires Defendants to preserve records and report new business activity. Section VII allows for expedited discovery of information relevant to a preliminary injunction hearing. These are necessary provisions to stop Defendants' scam and to help identify the scope of unlawful practices, other participants, and the location of assets.

## IV. CONCLUSION

Defendants have caused and are likely to continue to cause substantial injury to the public through their violations of the FTC Act. The FTC respectfully requests that the Court issue the proposed TRO to protect the public from further harm and to help ensure the possibility of effective final relief.[30]

Respectfully submitted,

WILLARD K. TOM
General Counsel

DATED: April 13, 2011

s/Guy G. Ward
Guy G. Ward
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL 60603
(312) 960-5612 [phone]
(312) 960-5600 [fax]
gward@ftc.gov

Attorney for Plaintiff
FEDERAL TRADE COMMISSION

---

[30] The FTC has submitted a proposed TRO with its motion.